UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES L. DYE,<br>Plaintiff,<br>v.<br>UNITED STATES GOVERNMENT,<br>Defendant. | Case No. 16-cv-06882-KAW<br><br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: Dkt. No. 15 |

On November 30, 2016, Plaintiff James L. Dye filed this Federal Torts Claim Act ("FTCA") case against the United States, asserting that Plaintiff suffered an injury when he slipped and fell in the Ronald V. Dellums Federal Building on January 8, 2010. (Compl. at 4, Dkt. No. 1.)

On October 27, 2017, Defendant moved to dismiss the case based on: (1) Plaintiff's failure to timely exhaust administrative remedies, (2) the FTCA's independent contractor exception, and (3) the discretionary function exception. (Def.'s Mot. to Dismiss at 1, Dkt. No. 15.) Upon consideration of the parties' filings, as well as the arguments presented at the January 18, 2018 hearing, and for the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## I. BACKGROUND

In his complaint, Plaintiff alleges that on January 8, 2010, he entered the Ronald V. Dellums Federal Building. (Compl. at 4.) Due to rain, the marble floors were wet, and janitors had put down rugs but left a three- to four-foot gap between the doorway and the edge of the rugs. (*Id.*) Plaintiff alleges that the gap was not visible, and that when he turned left, he slipped and went down on his knees before landing on his back. Plaintiff injured his back, knees, head, and

ankle, and was knocked unconscious. When he regained consciousness, a security officer was standing over him, asking if he was alright. The security officer helped Plaintiff off the floor, without checking for injuries, sat Plaintiff down on a bench, and called for an ambulance. (*Id.*)

In a declaration in support of Plaintiff's opposition, Plaintiff states that it took him approximately 90 days after the incident to recover and begin the process of filing a claim. (Dye Decl. ¶ 3, Dkt. No. 21.) Plaintiff first focused on trying to obtain legal assistance, but was unable to find willing counsel. (Dye Decl. ¶ 4.) Plaintiff then began calling government agencies, who told him to contact other agencies. (Dye Decl. ¶ 5.) Plaintiff also visited local offices, but was unable to get accurate information on how to file a claim. On May 12, 2010, Plaintiff called the Federal Dispatch Service, and spoke with Officer Wilson, who referred Plaintiff to Commander McHugh. (Dye Decl. ¶ 6.)

On May 14, 2010, Plaintiff spoke to Commander McHugh, who suggested that Plaintiff contact U.S. Immigration and Customs Enforcement ("ICE") to make a Freedom of Information Act ("FOIA") request for the guard report on the January 8, 2010 event. (Dye Decl. ¶ 7.) Plaintiff was able to make contact with an ICE representative in June 2010, and received a letter on June 17 which explained how to obtain the guard report. (Dye Decl. ¶ 8.) In late June or early 2010, Plaintiff contacted the Department of Homeland Security ("DHS") National Protection and Programs Directorate ("NPPD"), seeking a FOIA request form. (Dye Decl. ¶ 9.) Plaintiff never received a form, and in October 2010, reached out to an ICE specialist who assisted him in obtaining the FOIA request form. (Dye Decl. ¶ 10.)

On October 28, 2010, Plaintiff submitted the FOIA request. On November 4, 2010, a DHS representative acknowledged receipt of the FOIA request. (Dye Decl. ¶ 11.) On November 11, 2010, Plaintiff spoke to someone at DHS about obtaining a claim form, and was referred to the Los Angeles Branch. (Dye Decl. ¶ 12.) On December 16, 2010, Plaintiff received the guard report regarding the January 8, 2010 event, but was still not able to get the claim form, despite making several additional calls. (Dye Decl. ¶ 13.)

Around this time, Plaintiff's domestic partner became terminal. (Dye Decl. ¶ 14.) Plaintiff was responsible for her day-to-day care, and states that he was unable to deal with the claim for

2

the next six months.

In May 2011[1], Plaintiff again attempted to obtain legal counsel, to no avail. (Dye Decl. ¶ 15.) At an unknown point, Plaintiff called DHS to obtain the claim form. (Dye Decl. ¶ 16.) Plaintiff asserts that he spoke with Frank S. Levi, an attorney advisor for the Federal Protective Service, who cautioned him about the statute of limitations and encouraged him to file quickly. (Dye Decl. ¶ 16; Levi Decl. ¶ 1, Dkt. No. 15-3.) Mr. Levi gave Plaintiff the form and instructed him to fax it immediately. (Dye Decl. ¶ 16.) Plaintiff states that he faxed the form on January 5, 2012, and assumed that it was being submitted to the right agency as Mr. Levi had requested that it be sent directly back to him.

Mr. Levi, in turn, states that he has no recollection of communicating with Plaintiff, nor does he have any file or record of any such communication. (Supp. Levi Decl. ¶ 2, Dkt. No. 22-1.) Mr. Levi states that when informed by an individual that they have a potential claim, it is his custom and practice to tell them to submit a claim by e-mail. (Supp. Levi Decl. ¶ 3.) Mr. Levi asserts that he does not usually tell people to submit claims by fax because e-mail is private and more reliable. Mr. Levi also states that he has a custom and practice of sending claimants a written acknowledgment and receipt of claim. (Supp. Levi Decl. ¶ 4.) Additionally, Mr. Levi asserts that he has occasionally received inquiries about slip and fall incidents in federal facilities, and it is his custom and practice to refer such individuals to the General Services Administration ("GSA") because that is the agency with potential liability. (Supp. Levi Decl. ¶ 5.)

In addition to describing his custom and practice, Mr. Levi states that he has searched through his records, and found no e-mail records or acknowledgments and receipt of communications with Plaintiff. (Supp. Levi Decl. ¶¶ 3-4.) Mr. Levi also searched the Federal Protective Service's computerized database of administrative tort claims filed with the agency, but found no claims by Plaintiff. (Levi Decl. ¶ 4.) More recently, Mr. Levi searched the databases of ICE and the DHS, General Counsel's front office, but found no claims filed by Plaintiff. (Supp.

---

[1] Plaintiff states May 2012, but this appears to be a typo as the remaining declaration concerns later events taking place in January 2012. (*See* Dye Decl. ¶ 16.)

3

1 Levi Decl. ¶ 7.)

2 On November 30, 2016, Plaintiff filed the instant action against Defendant. On October 27, 2017, Defendant filed its motion to dismiss. On December 12, 2017, Plaintiff filed his opposition brief. (Plf.'s Opp'n, Dkt. No. 21.) On December 20, 2017, Defendant filed its reply. (Def.'s Reply, Dkt. No. 22.)

The Court held a hearing on January 18, 2018. (Dkt. No. 24.) At the hearing, the Court asked Plaintiff what efforts he took to pursue his claim between May 2011 and January 2012. Plaintiff requested leave to file supplemental briefing on the matter, which the Court permitted.

On February 1, 2018, Plaintiff filed his supplemental brief. (Dkt. No. 28.) Plaintiff explained that he was unable to obtain legal assistance in May 2011, and became "[d]isheartened and overwhelmed," "succumb[ing] to self-defeating beliefs and feelings . . . ." (*Id.* at 2.) From May to June, Plaintiff made additional attempts to file, but received wrong information that resulted in his depression, which was increased by the lack of support by his family and friends. (*Id.*) Plaintiff also continued to deal with the health issues of his live-in partner, and he developed unspecified major health problems, which persist to the present. As a result of these medical problems, and frustration with not being able to obtain legal representation or reliable directions, Plaintiff began to drink between June and November 2011. In late November 2011, Plaintiff regained his sobriety and focus, and started to pursue his claim again. (*Id.*)

On February 8, 2018, Defendant filed its reply to Plaintiff's supplemental brief. (Dkt. No. 29.)

## II. LEGAL STANDARD

### A. Motion to Dismiss under Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion tests whether a complaint alleges grounds for federal subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036,

4

1039 n.2 (9th Cir. 2003). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). "[I]f the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014). An exception exists, however, where "a court must leave the resolution of material factual disputes to the trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim." *Id.* at 1122 n.3.

**B.  Motion to Dismiss under Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### III. DISCUSSION

In general, "[t]he United States, as sovereign, can only be sued to the extent it has waived its sovereign immunity." *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006). The FTCA "waives the sovereign immunity of the United States for certain torts committed by federal employees under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* (quotation omitted). The FCTA requires, however, that prior to filing an action for money damages, a claimant must first exhaust administrative remedies. *Id.* This "exhaustion requirement is jurisdictional in nature and must be interpreted strictly." *Id.*

To satisfy the exhaustion requirements, an administrative claim must be "presented" within two years of the date the claim accrues. 28 U.S.C. § 2401. This two-year time limit is not jurisdictional. *United States v. Wong*, 135 S. Ct. 1625, 1633 (2015) ("Section 2401(b) is not a jurisdictional requirement"). 28 C.F.R. § 14.2 states: "a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages . . . ."

6

1    Here, Plaintiff asserts that he faxed the claim form on January 5, 2012 to Mr. Levi of DHS. (*See* Compl. at 4; Plf.'s Opp'n at 5.) Defendant responds with two arguments. First, Defendant contends that Plaintiff's evidence of fax transmission is insufficient to establish receipt. (Def.'s Mot. to Dismiss at 9.) Second, Defendant argues that even assuming the fax transmission was received, Plaintiff submitted the claim to the wrong agency, as his claim should have been presented to GSA. (*Id.* at 10-11.) Plaintiff, in turn, suggests that equitable tolling should apply. (Plf.'s Opp'n at 3-5.)

### A. Sufficiency of Fax Transmission

Defendant argues that fax evidence is insufficient to establish receipt, and that in any case, it is not clear from the fax transmittal sheet that the fax included Plaintiff's claim. (Def.'s Mot. at 9.) Defendant relies on cases in which the Ninth Circuit found that evidence of a claim form being mailed were not enough to satisfy the exhaustion requirement. For example, in *Estes v. United States*, the Ninth Circuit found that there was insufficient evidence of receipt where the plaintiff's counsel mailed the claim form, but the agency had no record of receipt. 302 Fed. Appx. 563, 565 (9th Cir. 2008). Although the plaintiff submitted a proof of service that was attached to the claim, the Ninth Circuit found that this was only evidence that the claim form was mailed, not that the claim form was actually received. *Id.*; *see also Vacek*, 447 F.3d at 1252 (finding insufficient evidence of receipt where the plaintiff's counsel mailed the completed form, but not by certified mail, and did nothing to verify that the claim had been received). Defendant does not, however, cite to any cases concerning fax transmittals, nor does Defendant explain why fax transmittals are comparable to mail.

In *Thompson v. United States*, the parties disputed whether the claim forms were received on April 17 or April 20, with the two-year presentment period ending on April 17. Case No. 3:16-cv-654-YY, 2017 WL 1483346, at *1 (D. Ore. Apr. 5, 2017), *adopted by Thompson v. United States*, Case No. 3:16-cv-654-YY, 2017 WL 1483379, at *1 (D. Ore. Apr. 24, 2017). The plaintiff produced a fax report stating that seven pages were faxed on April 17, while the defendant asserted that it did not receive the forums until April 20. *Id.* The district court converted the defendant's Rule 12(b)(1) motion into a motion for summary judgment on the ground that a statute

7

of limitations defense was not a jurisdictional question, and that there were factual disputes outside of the pleadings. *Id.* at *9; *see also Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206, 1206 n.2 (9th Cir. 1995) (holding that a statute of limitations issue had to be raised in a Rule 12(b)(6) motion to dismiss and not a Rule 12(b)(1) motion to dismiss, and that where the applicability of equitable tolling depended on matters outside the pleading, it was not generally amenable to being resolved on a Rule 12(b)(6) motion); *Ross v. United States*, No. 2:15-cv-1090-BJR, 2016 WL 6037973, at *2 (W.D. Wash. Oct. 14, 2016) ("Because the time limit prescribed by § 2401(b) is nonjurisdictional, and because the Government has supported its motion with documents outside the pleadings, the Court will analyze the Government's motion to dismiss as a motion for summary judgment"). Viewing the evidence in the light most favorable to the plaintiff, there was a genuine issue of material fact as to whether the claim forms were submitted within the statute of limitations. *Thompson*, 2017 WL 1483346, at *9; *cf. Sack v. U.S. Dep't of Health & Human Servs.*, Case No. 16-cv-5505-MEJ, 2017 WL 2472952, at *4 (N.D. Cal. June 8, 2017) ("If Plaintiffs had follow[ed] HHS' instructions and either faxed the copies directly to HHS at the number provided by Torres or even arranged for same-day hand delivery at the agency, the tort claim would have been received prior to the expiration of the statute of limitations").

Here, as in *Thompson*, there is a dispute over whether Plaintiff presented his claims to the agency within § 2401's two-year time limit. As found by the Supreme Court, this is not a jurisdictional question, and therefore must be considered under Rule 12(b)(6). *See Wong*, 135 S. Ct. at 1634. As the parties rely on evidence outside the record, including declarations, the Court will analyze the motion as a motion for summary judgment.

The parties have presented a fax report stating that fifteen pages were sent to Mr. Levi on January 5, 2012. (*See* Brown Decl., Exh. B at 15, Dkt. No. 15-2.) Plaintiff also states in his declaration that he faxed the form on January 5, 2012. (Dye Decl. ¶ 16.) Defendant, in turn, has presented declarations by Mr. Levi that there is no record of Plaintiff's claim. (Levi Decl. ¶ 5; Supp. Levi Decl. ¶¶ 6-7.) Viewing the evidence in the light most favorable to Plaintiff, the Court finds there is a genuine issue of material fact as to whether the fax report was received on January 5, 2012, prior to the expiration of the two-year period on January 8, 2012.

### B. Constructive Filing

Defendant next argues that even if Plaintiff's claim form was received by DHS on January 5, 2012, Plaintiff did not send his claim to the *correct* agency, *i.e.*, GSA, within the two-year period. (Def.'s Mot. to Dismiss at 10.)

Courts in this circuit have found that "under certain limited circumstances, a claim filed with the wrong agency may nevertheless be considered constructively filed with the appropriate agency." *Ortiz ex rel. Ortiz v. United States*, No. CIV F 03-6451 AWI SMS, 2007 WL 404899, at *10 (E.D. Cal. Feb. 2, 2007). "Although the Ninth Circuit has not addressed the issue . . . other circuits have found that a timely, but incorrectly, filed claim does constitute proper presentment where the federal agency failed to comply with 28 C.F.R. § 14.2(b)(1)." *Bhatnagar v. United States*, Case No. 14-cv-327-MEJ, 2015 WL 4760386, at *6 (N.D. Cal. Aug. 12, 2015). 28 C.F.R. § 14.2(b)(1), in turn, states:

> A claim shall be presented to the Federal agency whose activities gave rise to the claim. When a claim is presented to any other Federal agency, that agency shall transfer it forthwith to the appropriate agency, if the proper agency can be identified from the claim, and advise the claimant of the transfer. If transfer is not feasible the claim shall be returned to the claimant. The fact of transfer shall not, in itself, preclude further transfer, return of the claim to the claimant or other appropriate disposition of the claim. A claim shall be presented as required by 28 U.S.C. § 2401(b) as of the date it is received by the appropriate agency.

Thus, "'when a federal agency fails to comply with the transfer regulation . . . a timely but misdelivered claim may nevertheless be deemed timely presented to the proper agency.'" *Id.* (quoting *Bukala v. United States*, 854 F.2d 201, 204 (7th Cir. 1988).

In applying 28 C.F.R. § 14.2(b)(1), however, "claimants who wait to the last minute or the eleventh hour and file with the wrong agency cannot take advantage of constructive filing." *Bhatnagar*, 2015 WL 4760386, at *7; *see also Bukala*, 854 F.2d at 204 ("Where one agency of government attempts in a dutiful and timely fashion to transfer a misdelivered claim to the appropriate federal agency and despite due diligence the claim arrives at the proper agency after the two year limitations period has run, the claim will be time-barred"). This allows time for transfer of the claim to the appropriate agency. *See Lotrionte v. United States*, 560 F. Supp. 41, 43 (S.D.N.Y.) ("The Court must imply at least a minimal period for transfer of the claim to the

appropriate agency"). Although there is no bright line for what constitutes "eleventh hour" or a "last minute" filing, courts have found that claims filed with the wrong agency approximately at least a month prior to the end of the statute of limitations were eligible for constructive filing, while claims filed eighteen days or fewer before the end of the statute of limitations were not. *See Ortiz*, 2007 WL 404899, at *17 (permitting constructive filing where claim was filed with wrong agency thirty-three days before the expiration of the limitations period); *Lotrionte*, 560 F. Supp. at 42-43 (not permitting constructive filing where claim was filed with wrong agency three days before the expiration of the limitations period); *Martinez v. Minnis*, 257 Fed. Appx. 261, 264 (11th Cir. 2007) (not permitting constructive filing where claim was filed with wrong agency four days before the expiration of the limitations period); *Massengale v. United States*, No. 05CV2275(RJL), 2006 WL 3220333, at *1-2 (D.D.C. Nov. 6, 2006) (not permitting constructive filing where claim was filed with wrong agency eighteen days before the expiration of the limitations was not eligible for constructive filing).

Here, Plaintiff filed his claim with DHS on January 5, 2012, three days prior to the expiration of the two-year statute of limitations on January 8, 2012. This three-day period is comparable or significantly less than other periods of time that courts have found did not warrant constructive filing. The Court therefore concludes that Plaintiff is not eligible for constructive filing, and that Plaintiff's administrative claim was not received by the agency within two years of the date the claim accrued.

### C. Equitable Tolling

Plaintiff argues that equitable tolling applies in this case. (Plf.'s Opp'n at 3.) Equitable tolling exists "to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the evils of archaic rigidity." *Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (internal quotation omitted). The party invoking "equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Id.* (internal quotation omitted). The first element "requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances. Central to the analysis is whether

10

the plaintiff was without any fault in pursuing his claim." *Id.* (internal quotation omitted). As to the second element, the party "must show that extraordinary circumstances were the cause of his untimeless and . . . made it impossible to file the document on time." *Id.* (internal quotation omitted). Thus, equitable tolling is generally granted "when litigants are unable to file timely documents as a result of external circumstances beyond their direct control." *Id.* (internal quotation omitted).

Here, Plaintiff asserts that there were extenuating circumstances because it took him approximately 90 days to recover from the January 8, 2010 slip and fall. (Plf.'s Opp'n at 3.) Following that, he spent several months seeking an attorney, but was unable to obtain one. (*Id.* at 3-4.) Plaintiff then sought to obtain information from the government, including calls and visits to local offices, and ultimately obtained information on how to get the guard report in June or July 2010. (*Id.* at 4.) Plaintiff received the FOIA form in October 2010, and received the guard report in December 2010. (*Id.* at 5.) Around this time, Plaintiff's domestic partner became gravely ill, and Plaintiff was unable to work on his claim for six months. (*Id.*) Plaintiff again began seeking counsel in May 2011. (*Id.*) Plaintiff began to feel self-defeated when he was unable to obtain legal assistance. (Dkt. No. 28 at 2.)

In May and June 2011, Plaintiff made additional attempts to file, but apparently received wrong information, contributing to his depression. His depression was further fueled by the lack of support of his family and friends. Plaintiff also developed health problems which persist to the present. These health problems, combined with his domestic partner's health issues and his frustration with not obtaining legal representation or reliable assistance, resulted in Plaintiff drinking too much between June and November 2011. (*Id.*) In late November, Plaintiff began to pursue his claim again, and at some unknown point, spoke to Mr. Levi, who provided Plaintiff with the claim form and advised him to file quickly. (*Id.*; Plf.'s Opp'n at 5.) Plaintiff did so on January 5, 2012, shortly before the expiration of the two-year statute of limitations.

The Court finds that these facts do not warrant equitable tolling. First, while the Court is sympathetic to Plaintiff's medical problems, as well as those of his domestic partner's, these facts do not reach the level of extraordinary circumstances that would prevent Plaintiff from filing his

11

1  claim. Indeed, despite Plaintiff's medical problems persisting to this day, Plaintiff was still able to
2  file his claim in January 2012, albeit with the wrong agency.

3  Second, although the Court understands that Plaintiff felt frustrated and self-defeated by the inability to find counsel or get clear directions, as well as the lack of support from his family, it does not appear to have rendered Plaintiff mentally incapacitated or prevented him from managing his affairs. Courts in this circuit have generally found that a plaintiff must have been incapacitated due to mental incompetence to equitably toll administrative deadlines. *Lacayo v. Donahoe*, Case No. 14-cv-4077-JSC, 2015 WL 993448, at *11 (N.D. Cal. 2015). "The threshold for incapacitation therefore requires a showing that the plaintiff 'was completely psychiatrically disabled during the relevant limitation period.'" *Id.* (quoting *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999)). Here, Plaintiff states that he was frustrated and turned to drinking, but does not suggests that he was completely incapacitated, to the point that he was unable to manage his own affairs. In fact, it appears that Plaintiff was able to continue caring for his domestic partner during this time, and was able to continue to attempt to file his claim in May and June 2011, which further suggests that Plaintiff was not incapacitated by his negative feelings. *Compare with Elshirbiny v. Hewlett Packard Co.*, C-00-4104 MMC, 2001 WL 590034, at *4-5 (N.D. Cal. May 24, 2001) (no equitable tolling where the plaintiff had chronic fatigue syndrome and asserted that the defendants were suppressing her motivation by making her feel inferior because there was no showing that these impairments affected her ability to function or communicate, or from obtaining the information needed); *contrast with Stoll*, 165 F.3d at 1242 (finding the plaintiff was completely incapacitated where, as a result of repeated sexual abuse, rape, and assault, the plaintiff repeatedly attempted suicide, and was unable to read, open mail, or function in society). Similarly, there is no showing that Plaintiff's drinking reached a level of completely incapacitating him.

In addition, circumstances such as Plaintiff's inability to find counsel are not extraordinary circumstances that prevented Plaintiff from filing his claim; Plaintiff still did not have counsel in January 2012, but was still able to file his claim. While counsel would have been able to assist Plaintiff, the lack of counsel did not make it impossible for Plaintiff to file his claim. As to the

12

failure of some individuals or officers to assist Plaintiff with obtaining forms or providing clear directions, the Court finds that this too did not make it impossible for Plaintiff to file his claim. While no doubt frustrating, as Plaintiff has stated, this did not prevent Plaintiff from filing his claim, particularly where it does not appear he took any actions to file between June and November 2011. In short, the circumstances described by Plaintiff, while unfortunate, did not reach the point that Plaintiff was unable to timely file his administrative claim. Thus, equitable tolling is not applicable in this case.

Because equitable tolling does not apply, the Court finds that Plaintiff did not timely present his administrative claim prior to the expiration of the § 2401's two-year time limit. Plaintiff therefore failed to exhaust his remedies, requiring dismissal of this case with prejudice.

### IV. CONCLUSION

For the reasons discussed above, the Court GRANTS Defendant's motion to dismiss Plaintiff's complaint with prejudice because Plaintiff did not present his administrative claim to GSA within the two-year statute of limitations.

IT IS SO ORDERED.

Dated: February 28, 2018

KANDIS A. WESTMORE
United States Magistrate Judge